# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**NELSA MONTUFAR-MEJIA**
South Texas Detention Complex
566 Veteran Drive
Pearsall, Texas 78061;

**E.A.M., a Minor**
Homestead Emergency Reception Center
Homestead, FL;

**Plaintiffs**,

v.

**U.S IMMIGRATION AND CUSTOMS
ENFORCEMENT ("ICE"),**
500 12th Street SW Washington, DC 20530;

**U.S. DEPARTMENT OF HOMELAND
SECURITY ("DHS"),**
245 Murray Lane SW Mailstop 0485
Washington, DC 20528-0075;

**U.S. CUSTOMS AND BORDER PROTECTION
("CBP"),**
1300 Pennsylvania Ave. NW
Washington, DC 20229;

**U.S. CITIZENSHIP AND IMMIGRATION
SERVICES ("USCIS"),**
20 Massachusetts Avenue NW
Washington, DC 20529;

**THOMAS HOMAN, ACTING DIRECTOR OF
ICE,**
500 12th Street SW Washington, DC 20536;

**DANIEL BIBLE, SAN ANTONIO FIELD OFFICE
DIRECTOR, ICE**
San Antonio Field Office
1777 NE Loop 410 Floor 15
San Antonio, TX, 78217;

**ANDREW HURON, SAN ANTONIO ASSISTANT
FIELD OFFICE DIRECTOR, ICE**
San Antonio Field Office
1777 NE Loop 410 Floor 15
San Antonio, TX, 78217;

Case No. _____

**KIRSTJEN NIELSEN, SECRETARY OF DHS,**
500 12th Street SW Washington, DC 20536;

**JEFFERSON BEAUREGARD SESSIONS III,**
**ATTORNEY GENERAL OF THE UNITED**
**STATES,**
950 Pennsylvania Avenue NW Washington, DC
20530;

**L. FRANCIS CISSNA, DIRECTOR OF USCIS,**
20 Massachusetts Avenue NW Washington, DC 20529;

**KEVIN K. MCALEENAN, ACTING**
**COMMISSIONER OF CBP,**
1300 Pennsylvania Ave, NW Washington, DC 20229;

**Defendants**.

## PETITION FOR HABEAS CORPUS AND COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF

Nelsa Montufar-Mejia and her nephew and de facto son E.A.M., a minor child raised

since infancy, by and through counsel, file this civil action and petition for habeas corpus against

Defendants U.S. Immigration and Customs Enforcement ("ICE"); U.S. Department of Homeland

Security ("DHS"); U.S. Customs and Border Protection ("CBP"); U.S. Citizenship and

Immigration Services ("USCIS"); Thomas Homan, Acting Director of ICE; Daniel Bible, San

Antonio Field Office Director, ICE; Andrew Huron, San Antonio Assistant Field Office Director,

ICE; Kirstjen Nielsen, Secretary of DHS; Jefferson Beauregard Sessions III, Attorney General of

the United States; L. Francis Cissna, Director of USCIS; and Kevin K. McAleenan, Acting

Commissioner of CBP; (collectively, "Defendants") to vindicate their substantive and procedural

due process rights under the Fifth Amendment of the U.S. Constitution and their rights under

the International Convention on Civil and Political Rights, the United Nations Convention

Relating to Status of Refugees, 8 U.S.C. § 1158, and the International Child Abduction Convention.

## **INTRODUCTION**

This complaint challenges the United States Government's forcible and continued separation of Ms. Montufar from her nephew and de facto son E.A.M. Ms. Montufar is the sole primary caregiver, legal guardian, and biological aunt of E.A.M., a thirteen-year old boy who has been raised by Ms. Montufar and who considers her his mother. Ms. Montufar and E.A.M. bring this action to halt Ms. Montufar's pending deportation until she and her son have been reunited and until she has a full and fair opportunity to seek asylum in this country. That opportunity, guaranteed to her by statute, has been violated by the forcible separation of Ms. Montufar from E.A.M. The shock of the separation from her de facto son rendered her unable to meaningfully prepare for and participate in her asylum proceedings, resulting in an erroneous negative credible fear determination. E.A.M. has been irreversibly traumatized and continues to suffer from the separation, and desperately wants to be reunited with his mother. Ms. Montufar is also a member of the class certified in Ms. L v. U.S. Immigration & Customs Enf't, No. 3:18-cv-00428-DMS-MDD at 17 (S.D. Cal. June 26, 2018) (ECF No. 82), and as such, Defendants are prohibited from deporting her. Ms. Montufar's deportation should be stayed and she should be reunited with E.A.M.

## **JURISDICTION**

1.      This case arises under the Fifth Amendment to the United States Constitution. The court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 2241 (habeas jurisdiction); and Art. I., § 9, cl. 2 of the United States Constitution ("Suspension Clause"). Ms. Montufar is in federal custody for purposes of habeas jurisdiction.

**VENUE**

2.      Venue is proper under 28 U.S.C. § 1391 because at least one of the Defendants is subject to personal jurisdiction in this district with regards to this action.

**PARTIES**

3.      Plaintiff Ms. Montufar is a citizen of Honduras.  She is the biological aunt, legal guardian, and sole primary caregiver of Plaintiff E.A.M., also a citizen of Honduras.

4.      Defendant U.S. Immigration and Customs Enforcement ("ICE") is the sub-agency of DHS that is responsible for carrying out removal orders and overseeing immigration detention.

5.      Defendant U.S. Department of Homeland Security ("DHS") has responsibility for enforcing the immigration laws of the United States and is a department of the executive branch of the Government which has been delegated with authority over "unaccompanied minors."

6.      Defendant U.S. Customs and Border Protection ("CBP") is the sub-agency of DHS that is responsible for the initial processing and detention of noncitizens apprehended near the U.S. border.

7.      Defendant U.S. Citizenship and Immigration Services ("USCIS") is the sub-agency of DHS that, through its Asylum Officers, conducts interviews of certain individuals apprehended at the border to determine whether they have a credible fear of persecution and should be permitted to apply for asylum.

8.      Defendant Thomas Homan is sued in his individual capacity and his official capacity as the Director of ICE.

9.      Defendant Daniel Bible is sued in his individual capacity and his official capacity as Field Office Director, San Antonio Field Office, ICE.

10.     Andrew Huron is sued in his individual and official capacity as Assistant Field Office Director, San Antonio Field Office, ICE.

11.     Defendant Kirstjen Nielsen is sued in her individual capacity and official capacity as the Secretary of the Department of Homeland Security.  In this capacity, she directs each of the component agencies within DHS: ICE, USCIS, and CBP.  As a result, Respondent Nielsen has responsibility for the administration of the immigration laws pursuant to 8 U.S.C. § 1103 and is empowered to grant asylum or other relief.

12.     Defendant Jefferson Beauregard Sessions III is sued in his individual capacity and his official capacity as the Attorney General of the United States.  At all times relevant to this Complaint, he had responsibility for the administration of the immigration laws pursuant to 8 U.S.C. § 1103, oversaw the Executive Office of Immigration Review, was empowered to grant asylum or other relief.

13.     Defendant L. Francis Cissna is sued in his individual and official capacity as the Director of USCIS.

14.     Defendant Kevin K. McAleenan is sued in his individual and official capacity as the Acting Commissioner of CBP.

## **RELEVANT FACTS**[1]

15.     Ms. Montufar is a citizen of Honduras. She is the de facto mother and biological aunt of Plaintiff E.A.M., a minor child, and has been his legal guardian since he was born.

16.     E.A.M.'s mother, Ms. Montufar's sister, died from complications of childbirth

---

[1] The factual information provided herein is drawn from the record of declarations of Ms. Montufar's relatives in the United States as cited, and non-privileged factual information from communications between Ms. Montufar and Raices, the organization representing Ms. Montufar with respect to other immigration matters.  Despite diligent efforts, counsel for Plaintiffs has not yet been able to secure a declaration from Ms. Montufar.  At counsel's request, a representative of Raices attempted to interview Ms. Montufar both yesterday and today, but was unable to meet with her due to the lack of facilities at the South Texas Detention Complex, which has only four rooms for attorney visits, approximately 1,700 detainees, and limited visiting hours.

shortly after E.A.M. was born.  E.A.M.'s father is not listed on his birth certificate, and he has never met him.  Ms. Montufar became E.A.M.'s guardian when his mother died and has cared for him ever since.  E.A.M. refers to Ms. Montufar as "Mamá."

17.     In May 2018, Ms. Montufar and E.A.M. fled Honduras after police officers threatened to "make her disappear," and repeatedly harassed her.  They accused her of selling liquor, which she did not do, but they would not credit her response.  When she raised the issue to the local magistrate, he refused to assist her.  The magistrate told the police she made the report, and the police then damaged the belongings in her home and threatened to "make her disappear," which she understood meant that they would kill her.

18.     Ms. Montufar feared she and E.A.M. would be killed by the police if they stayed in Honduras. The day after she received the threat to "make her disappear", she and E.A.M. fled their home in an effort to obtain asylum in the U.S.

19.     Upon entry into the U.S., on or about June 15, 2018, agents from Defendant Customs and Border Protection ("CBP") forcibly separated E.A.M. from Ms. Montufar, leaving her disoriented and in shock at the loss of her child.

20.     On June 20, 2018, by Executive Order 13841 ("Executive Order"), President Trump ostensibly ended his administration's policy of forcibly separating children from their families at the border. Nonetheless, without any assertions of abuse, neglect, or parental unfitness, and with no hearings of any kind, the Government continues to detain parents and children separated prior to the issuance of the Executive Order, including Ms. Montufar.

21.     Numerous organizations, mental health professionals, and the American Academy of Pediatrics have been vocal in criticizing the forcible separation policy. Forced separation from parents and other caregivers causes severe trauma to children, especially those who are already traumatized due to conditions in their homeland. The resulting cognitive and

emotional damage from separation can be permanent. The Trump Administration acknowledged as much by ending the practice with the Executive Order on June 20, 2018.

22.     Ms. Montufar's forcible separation from E.A.M. was a traumatic event which caused her significant psychological distress and shock.  Meanwhile, E.A.M. continues to suffer every day he is separated from Ms. Montufar.

23.     During this period of intense psychological trauma, Ms. Montufar applied for asylum in the U.S.  On July 5, 2018, Defendant USCIS conducted a credible fear interview of Ms. Montufar.

24.     Having been forcibly separated from E.A.M. for over two weeks, and still lacking any idea where he was, Ms. Montufar was in a state of shock and confusion during her interview. She struggled to focus and respond to the interviewer's questions and was unable to describe fully the threats and governmental abuse that led her to flee Honduras. These threats support her credible fear that Ms. Montufar or E.A.M. will be harmed if they return to Honduras.

25.     Without a full understanding of Ms. Montufar's experiences, and having failed to question her adequately or to sufficiently consider the psychological trauma affecting her, the Asylum Officer interviewing Ms. Montufar found that she lacked a credible fear of persecution. As a result, Ms. Montufar is scheduled to be deported tomorrow morning, September 14, 2018.

26.     Ms. Montufar's deportation would further traumatize E.A.M., who continues to suffer severe and irreparable psychological trauma while apart from Ms. Montufar.

27.     The Due Process Clause of the U.S. Constitution's Fifth Amendment does not permit the Government to keep children from their primary caregivers without justification or even a hearing.  Federal statutes, including the Immigration and Naturalization Act, the

Convention Against Torture, and associated implementing regulations, require that an asylum applicant's credible fear determination be made only after a full and fair proceeding.

28.     Ms. Montufar was denied such a right due to the trauma and suffering caused by being forcibly separated from E.A.M. at the border.

29.     Furthermore, as an adult parent of a minor child who was detained in immigration custody by DHS and separated from her minor child, Ms. Montufar is a member of the class certified in Ms. L v. U.S. Immigration & Customs Enf't, No. 3:18-cv-00428-DMS-MDD, 2018 U.S. Dist. LEXIS 107364, at *27 (S.D. Cal. June 26, 2018) (ECF No. 82).

30.     The class certified by the Ms. L court includes all "adult parents" of separated minor children, and is not limited to only biological parents.  See Ms. L v. U.S. Immigration & Customs Enf't, No. 3:18-cv-00428-DMS-MDD, 2018 U.S. Dist. LEXIS 107364, at *27 (S.D. Cal. June 26, 2018) (ECF No. 82).  Moreover, the Ms. L court expressly excluded certain categories of parents from the class, but did *not* so exclude de facto or non-biological parents. Id. at *17, *28 n.10 (excluding "parents with criminal history or communicable disease, or those apprehended in the interior of the country or subject to the [President's executive order prohibiting family separations after June 20, 2018].)  And in subsequently ordering Defendants to reunite class members and their children, the Ms. L court repeatedly indicated that its injunction was meant to mitigate the suffering of separated "families" and "loved ones" – not merely biological parents and children. See id. at *3-6, *11-15, *22, *25, *27-28.

31.     It is apparent Defendants do not consider Ms. Montufar a member of the class, given their intention to deport her while her nephew and de facto son remains in ORR custody, but this is a legal question subject to determination, which the Ms. L court has not yet made.[2]

---

[2] Ms. Montufar plans to join a motion for clarification of the definition of class certification, to be filed in the Southern District of California.

32.     The Ninth Circuit court has prohibited Defendants from deporting <u>Ms. L</u> class members without their children absent the individual's affirmative, knowing, and voluntary waiver of that right, or a determination that the parent is unfit.  There has been no such waiver or determination in this case.

33.     As a result of the Defendants' actions in this case, Ms. Montufar is facing imminent deportation without a full and fair opportunity to pursue her asylum claim, and in violation of <u>Ms. L v. ICE</u>, leaving behind E.A.M. in ORR custody, who suffers each day he continues to be separated from his de facto mother.

34.     Given the irreparable and continuous emotional damage caused by Defendants' action, Plaintiffs request a stay of deportation, an immediate reunion with E.A.M., and reconsideration of Ms. Montufar's negative asylum determination.

## CAUSES OF ACTION

### COUNT I
### (Violation of Asylum Statute)

35.     All of the foregoing allegations are repeated and re-alleged as though fully set forth herein.

36.     Under United States law, noncitizens fleeing persecution shall have the opportunity to apply for asylum in the United States.  <u>See</u> 8 U.S.C. § 1225(b)(1) (expedited removal); 8 C.F.R. §§ 235.3(b)(4), 208.30, and 1003.42; 8 U.S.C. § 1158(a)(1). Ms. Montufar has a private right of action to vindicate her and E.A.M.'s right to apply for asylum.

37.     Defendants' separation of Ms. Montufar from E.A.M. violates federal asylum law, because it impermissibly infringed upon Ms. Montufar's ability to pursue her asylum claim.

## COUNT II
### (Punishment of Civil Detainee in Violation of Due Process)

38.     The U.S. Constitution's Fifth Amendment prohibits punishment of immigrants held in civil detention.  Bell v. Wolfish, 441 U.S. 520, 538-39 & n.20 (1979).

39.     At all times after Ms. Montufar was detained, Defendants and their agents and employees have continuously detained Ms. Montufar pursuant to civil immigration detention statutes or as a person charged with a crime awaiting trial.  Defendants have never detained Ms. Montufar as a convicted criminal. Defendants intend to punish Ms. Montufar and E.A.M. by taking the following actions:

  a.   forcibly separating them;

  b.   maintaining separation indefinitely; and

  c.   failing to provide meaningful information to Ms. Montufar about E.A.M.'s well-being, and anticipated reunification.

40.     Defendants' foregoing actions punish Plaintiffs regardless of Defendants' intent because they are patently excessive in relation to any legitimate objective.

## COUNT III
### (Family Separation in Violation of Substantive Due Process)
### (Against All Defendants Except USCIS Defendants in Their Official Capacities)

41.     All of the foregoing allegations are repeated and re-alleged as though fully set forth herein.

42.     The Due Process Clause of the U.S. Constitution's Fifth Amendment protects all "persons" on United States soil, including Plaintiffs.

43.     Plaintiffs have a liberty interest under the Due Process Clause in remaining

together as a family.

44.     The separation of Ms. Montufar from E.A.M. violates substantive due process

because it furthers no legitimate purpose, not to mention a compelling governmental interest.

## COUNT IV
### (Family Separation in Violation of Substantive Due Process: Supervisory Liability)
### (Against Defendants Homan, Nielsen and Sessions in Their Individual Capacities)

45.     All of the foregoing allegations are repeated and re-alleged as though fully set

forth herein.

46.     The Due Process Clause of the U.S. Constitution's Fifth Amendment protects

all "persons" on United States soil, including Ms. Montufar and E.A.M.

47.     Plaintiffs have a liberty interest under the Due Process Clause in remaining

together as a family.

48.     The separation of Ms. Montufar and E.A.M. violates substantive due process

because it furthers no legitimate purpose, much less a compelling governmental interest.

## COUNT V
### (Administrative Procedure Act—Arbitrary and Capricious Practice)
### (Against All Defendants Except USCIS Defendants)

49.     All of the foregoing allegations are repeated and re-alleged as though fully set

forth herein.

50.     The APA prohibits agency action that is arbitrary and capricious and contrary

to constitutional right.

51.     Defendants' separation of Plaintiffs without a compelling justification and

without a mechanism, protocol, or system to guarantee their reunification is final agency action

that is arbitrary and capricious. It accordingly violates the APA. 5 U.S.C. § 706(2)(A).

11

## COUNT VI

### Petition for Habeas Corpus Under Treaties of the United States: International Convention on Civil and Political Rights (Claim for Injunctive and Declaratory Relief Against All Defendants in Their Official Capacities)

52. All of the foregoing allegations are repeated and re-alleged as though fully set forth herein.

53. The ICCPR has been signed and ratified by the United States.

54. Under Article 17 of the ICCPR, "[n]o one shall be subjected to arbitrary or unlawful interference with her privacy, family, home or correspondence, nor to unlawful attacks on her honor and reputation." Article 23 states that "family is the natural and fundamental group unit of society and is entitled to protection by society and the State."

55. By forcibly separating Ms. Montufar from E.A.M., Defendants have subjected Ms. Montufar to arbitrary, unlawful, and unjustified interference with her family in violation of the ICCPR.

## COUNT VII

### Petition for Habeas Corpus Under Laws and Treaties of the United States: United Nations Convention Relating to Status of Refugees and 8 U.S.C. § 1158 (Claim for Injunctive and Declaratory Relief Against All Defendants in Their Official Capacities)

56. All of the foregoing allegations are repeated and re-alleged as though fully set forth herein.

57. The United States is party to the 1967 Protocol Relating to the Status of Refugees and key provisions have been incorporated into U.S. law giving individuals a cause for action for litigation. Under federal law, "any alien who is physically present in the United States or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in

international or United States waters), irrespective of such alien's status, may apply for asylum." 8 U.S.C. § 1158.

58.     Because the right to seek asylum and the definition of refugee, which stems from an international treaty, is directly incorporated into federal law, it creates a legal cause for action for Plaintiffs.

59.     By interfering with Ms. Montufar's right to be with her family, Defendants have unlawfully interfered with her right to seek asylum and punished her for doing so by traumatically separating her from her family.

## COUNT VIII
## PUNITIVE DAMAGES
### (Against Defendants Homan, Nielsen, Sessions, Cissna, McAleenan, Brooks, Azar, and Lloyd in Their Individual Capacities)

60.     Based on the foregoing, Plaintiffs are entitled to punitive damages because Defendants acted with willful indifference to the laws that protect Plaintiffs' constitutional rights.

## COUNT IX
## ATTORNEYS' FEES

61.     Based on the foregoing, Plaintiffs are entitled to attorneys' fees under all applicable laws.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

A.     Declare the separation of Ms. Montufar from E.A.M. to have unlawfully violated their substantive due process rights and interfered with her right to pursue an asylum claim in the United States;

B.     Enjoin Defendants from removing Ms. Montufar from the country until she is

reunited with E.A.M. and given a new opportunity to pursue her asylum claims;

C.      Preliminarily and permanently enjoin Defendants from continuing to separate

Ms. Montufar and E.A.M. and ordering that Ms. Montufar be released from

detention pending further proceedings in order to care for her minor child;

D.      Award compensatory damages to Plaintiffs, including pain and suffering arising

from the separation between Ms. Montufar and E.A.M.;

E.      Award punitive damages for Defendants' conscious disregard for Plaintiffs'

rights;

F.      Require Defendants to pay reasonable attorneys' fees and costs;

G.      Order all other relief that is just and proper.

Respectfully submitted this 13 of September, 2018.

/s/Timilin Sanders
Anne Robinson, DC Bar No. 503232
Timilin Sanders, DC Bar No. 989110
Clayton LaForge, DC Bar No. 1033938


LATHAM & WATKINS LLP
555 Eleventh Street, NW
Washington DC 20004
(202) 637-2200
timilin.sanders@lw.com